Hillsborough,
No. 4560.

ALTON P. HADLEY *v.* JOHN H. McLAUGHLIN.

Argued February 6, 1957.

Decided March 26, 1957.

*Upton, Sanders & Upton* (*Mr. Robert W. Upton* orally), for the plaintiff.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* and *Kenneth F. McLaughlin* (*Mr. Nourie* orally), for the defendant.

DUNCAN, J.   In support of his exceptions to the denial of the motions for a nonsuit and directed verdict the defendant asserts that the plaintiff was guilty of contributory negligence as a matter of law.   Relying upon the rule of *Harlow* v. *Leclair*, 82 N. H. 506, he argues that the plaintiff should be bound by his testimony on deposition that when he first saw the defendant's automobile it was 270 to 280 feet away, rather than 300 to 400 feet, as he estimated at the trial.   It is difficult to see what advantage the defendant can derive from this partial inconsistency.   At the trial the plaintiff testified on direct examination that the automobile was "at Lake Street" when he first saw it.   Lake Street was shown to be approximately 270 feet from where the plaintiff was struck.   On cross-examination, the plaintiff testified that the defendant was "a little mite" north of Lake Street, and that Lake Street "would be around three to four hundred feet . . . from the point of collision."

Whatever the distance the jury may have concluded the defendant was from the plaintiff when first seen other evidence warranted a finding that the defendant alone was causally negligent.   The plaintiff could be found to have exercised due care, whether it was believed that he watched the defendant's automobile until he was struck, or that he ceased to watch it when he was a step away from the westerly curb.   The jury could believe the plaintiff's testimony that "if the car had gone straight ahead" for the last seventy-five feet, "it would have gone behind me."   The place of the accident demonstrated that the plaintiff had time to cross the street, since it could be found that he had reached the westerly curb when struck.   He was entitled to assume that the defendant would see him and exercise care accordingly. *Carr* v. *Orrill*, 86 N. H. 226; *O'Brien* v. *Public Service Co.*, 95 N. H. 79, 81.   The defendant admitted that he saw the plaintiff when they were two hundred feet apart, and the jury could find that his failure thereafter to exercise reasonable care and to comply with

statutory requirements was the sole cause of the accident. *Colburn* v. *Normand*, 96 N. H. 250; *Carlin* v. *Drake*, 89 N. H. 52; *McCarthy* v. *Souther*, 83 N. H. 29. The motions for a nonsuit and directed verdict were properly denied.

The major issue arises out of the order of the Trial Court setting the verdict aside as to damages only, because inadequate and against the weight of the evidence. Following the accident the plaintiff was found unconscious upon the west sidewalk near a no-parking sign. The evidence as to whether he was thrown for any substantial distance was in conflict. In any event, he suffered a fracture of the superior ramus of the right hip, a severe comminuted fracture of the tibia and fibula of the right leg, with displacement of the fragments, and a severe wound of the upper forehead some two inches in length which required closing and resulted in a permanent scar. It was first attempted to reduce the leg fracture with the aid of traction secured by a wire inserted through the right heel bone. Ultimately it was found necessary to attach the broken bones by screws to a bone graft taken from the tibia of the plaintiff's left leg. This operation was performed on October 18, 1951, and resulted in permanent scars of both legs where incisions of 8 to 10 inches in length were made.

The plaintiff was discharged from the hospital on December 9, 1951, with his right leg still in a cast. The cast was removed and crutches furnished on February 24, 1952. X-rays taken at this time disclosed osteoporosis, or a wasting of the bone structure due to calcium withdrawal following disuse, through the lower leg, ankle, and foot including the heel bone. Circulation in the right leg was found to have been impaired by damage to the tissue and muscles and by the operation, so that pain and swelling resulted. There was limitation of motion in the right knee and also some swelling of the left leg. Damage to the nerves of the legs caused by the operation produced numbness, and the swelling of both ankles continued into June 1952. The plaintiff was then having difficulty in getting up and down stairs, but was able to carry on some light duties about the house.

The evidence on damages was complicated by the fact that the plaintiff suffered a second injury on September 30, 1952, when he fell from a ladder. He then suffered a fractured right shoulder and an abrasion of the forehead for which he was treated and from which he had substantially recovered before the trial. By November of 1952 he had sufficiently recovered the use of his right arm so

that he could lift it to the level of his head, and he and his wife went south until April. In July, 1953, his right leg was still swollen, and although he applied to his former employer for work, none was available which would permit him to sit while working. There was affirmative evidence that his age was not a factor in his inability to obtain employment. In 1954 and 1955 his condition remained much the same, with pain and swelling resulting from use of his legs.

In early 1954, it was discovered for the first time that the plaintiff had sustained a fracture of the right heel bone. The fracture was visible in an x-ray taken on September 30, 1952, but the plaintiff had complained of no foot injury at that time and the fracture was not discovered by the attending physician, whose attention was focused on the fractures of the leg suffered in the prior accident. An x-ray film taken on November 30, 1951, before the second accident, disclosed no fracture of the heel so that it evidently occurred on September 30, 1952. The plaintiff himself testified that he was ignorant of any injury to his right heel until he was informed of the fracture in January, 1954, when x-rays were taken in preparation for trial.

At the trial, expert witnesses called by the parties differed in their opinions as to the disabling effects of the fracture of the heel. The plaintiff's expert testified that since it was not a fracture of a weight-bearing surface and the plaintiff was able to use his foot immediately after the fall on September 30, 1952, he was of the opinion that the fractured heel had "not very much" influence upon the plaintiff's use of his foot. The defendant's expert, on the other hand, testified that movement of the fragment fractured from the heel bone would cause irritation "in the area" and produce some swelling and some pain. After describing the plaintiff's complaints in January, 1954, of pain in the lower right leg and ankle, and at the outer border of the right leg extending to the right thigh, the witness testified that the injury to the heel, rather than the earlier fracture of the leg bones, was in his opinion the cause of "the present disability and pain" about the "ankle joint where most of his complaints are at the present time." This witness also testified that the plaintiff's "present condition with reference to pain and walking about" would be the same if he had suffered only the heel fracture.

There was no injury to the left leg in the accident of September 30, 1952, so that swelling, pain, and numbness of that leg owing to

the operation for the removal of the bone graft, which continued up to the date of the trial, could not be attributed to the second accident. The defendant's expert conceded that numbness in the left leg was due to the operation, and that the swelling of the right leg was due to immobilization in the cast and to lack of use.

The plaintiff's medical bills prior to September 30, 1952, amounted to $2,773.45. Bills for x-rays and treatment of the original injuries after September 30, 1952, totalled $118.50. His wage at the time of the first accident was $61 a week, so that his wage loss prior to the second accident was $3,120. His life expectancy at ages 73 and 74 was shown to be in excess of seven years. It is apparent that the verdict of $6,600 provided only six hundred dollars damages for pain and suffering, disfigurement, incidental expenses, and such wage loss after September, 1952, as resulted from the first accident.

The evidence of the existence and cause of these elements of the damages was undisputed and except for the cause of wage loss after September, 1952, must be deemed to have been conclusively in favor of the plaintiff. *Hackett* v. *Railroad*, 89 N. H. 514; *Gomes* v. *Roy*, 99 N. H. 233, 235. On the state of the evidence, the finding of the Trial Court that the verdict was against the weight of evidence and its implied finding that it was conclusively so, was reasonable and ought not to be disturbed. *Wisutskie* v. *Malouin*, 88 N. H. 242, 246.

The defendant argues that to the extent the order setting aside the verdict is limited to "damages only," it is inconsistent with decided cases. *Moulton* v. *Langley*, 81 N. H. 138; *Doody* v. *Railroad*, 77 N. H. 161. The rule relied upon applies when it is apparent that the jury compromised their differences on liability by returning an inadequate verdict, or when it must be presumed to have done so. *Moulton* v. *Langley, supra,* 140. *Hackett* v. *Railroad, supra,* 518. "But a finding in the superior court upon the question of a partial retrial is conclusive here, if there was evidence upon which it could be made . . . . " *West* v. *Railroad*, 81 N. H. 522, 534.

Evidence upon which the finding could be made is to be found in this case. The record supports a finding that error affecting only the assessment of damages resulted from instructions to the jury regarding the second accident, to which the plaintiff duly excepted. These instructions were open to the interpretation that all of the plaintiff's complaints at the time of trial could be found

attributable to the second accident, and that if the jury so found, or if it should be unable to tell whether "present complaints" were due to the first or to the second accident, then the plaintiff was not entitled to recover "any sum for damages after September 30, 1952." If so interpreted the instructions were erroneous and would account for the failure to properly weigh the evidence, and to allow damages for permanent injuries inflicted before, but unquestionably persisting after September, 1952. Since the instructions in question related solely to damages, it could be found that only that issue was affected and that the jury's finding as to liability should stand. *Morin* v. *Company*, 78 N. H. 567, 570, and cases cited. The order setting aside the verdict "as to damages only" is accordingly sustained.

Certain exceptions have been neither briefed nor argued, and others require no consideration in view of the conclusions herein reached.

*New trial of issue of damages.*

WHEELER, J., took no part in the decision; the others concurred.